IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FAITH N. NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Case No. 4:18-cv-00412-FJ6 |
| UNITED STATES DEPARTMENT ) | |
| OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**
**(With Suggestions in Support)**

The United States Department of Education (Education) respectfully requests this Court grant summary judgment in its favor in this case on Plaintiff Faith Nelson's (Plaintiff or Nelson) First Amended Complaint (Doc. 14) pursuant to Federal Rule of Civil Procedure 56(c)(1), as there is no genuine dispute as to any material fact and Education is entitled to judgment as a matter of law. In support thereof, Education states as follows:

**FACTUAL BACKGROUND**

**1982 Promissory Note**

1. On May 5, 1982, Plaintiff signed a promissory note for a student loan in the amount of $2,500 with an interest rate at 9%.

2. On May 1, 1983, Plaintiff defaulted on the above loan.

3. On January 20, 1984, the Missouri Department of Higher Education (MDHE) paid the default claim on the above loan and began sending communications to Plaintiff after the default claim payment.

4. Over the course of 2 years, the MDHE sent the following communications

    a. On October 1, 1985, a Federal IRS offset Warning Notice

  b. On April 21, 1986, a State Tax Offset Warning Notice

  c. On June 21, 1986, a Repayment Acknowledgement and Default Billings Coupons
  d. On August 16, 1986, a 2nd DIMP Notice
  e. On August 31, 1986, a Credit Bureau Default Notice
  f. On January 31, 1987, an Annual Interest Letter

5. Over the course of 1 year, Plaintiff only made one payment in the amount of $728.09 to the MDHE via a federal offset payment.

6. On November 16, 1986, the MDHE assigned the loan to Education at which time the remaining balance was $2,469.71 ($2,464.84 in principal and $4.87 in accrued interest).

## 1985 Promissory Note

7. On May 1, 1985, Plaintiff signed a promissory note for a student loan in the amount of $2,500 with an interest rate of 9%.

8. On August 28, 1986, Plaintiff defaulted on the above loan.

9. On August 15, 1987, the Higher Education Foundation Program (HEAF) paid the default claim on the above loan.

10. Over the course of 3 years, HEAF received payments totaling $2,055.70 via federal offsets of $1,074.64 and two additional offsets of $352.11 and $628.95.

11. On May 25, 1993, the loan was assigned to Education at which time the remaining balance was $1,626.60 ($1,417 in principal and $208.76 in unpaid accrued interest).

## Education Correspondence For Both Notes

12. Over the course of 16 years, 1992-2008, Education mailed Plaintiff due process letters with the intent to collect the defaulted student loans via the Treasury Offset Program (TOP). The following payments were made within that time via federal offset programs and voluntary rehabilitation payments:

       g. On March 17, 2000, $826.91 via TOP
       h. On February 23, 2001, $1633.38 via TOP
       i. On May 16, 2003, $1073.00 via TOP
       j. On August 27, 2004, $115.81 via TOP
       k. On February 10, 2006, $898.28 via TOP
       l. On August 18, 2006, $463.00 via TOP
       m. On September 25, 2009, $450.00 via TOP
       n. On December 29, 2009, $96.00 via voluntary rehabilitation payment
       o. On January 29, 2010, $96.00 via voluntary rehabilitation payment
       p. On March 9, 2010, $96.00 via voluntary rehabilitation payment
       q. On April 1, 2010, $96.00 via voluntary rehabilitation payment
       r. On April 29, 2010, $96.00 via voluntary rehabilitation payment
       s. On June 2, 2010, $96.00 via voluntary rehabilitation payment
       t. On July 1, 2010, $96.00 via voluntary rehabilitation payment
       u. On August 3, 2010, $96.00 via voluntary rehabilitation payment
       v. On September 1, 2010, $96.00 via voluntary rehabilitation payment

13. In September of 2010, Plaintiff completed rehabilitation for both aforementioned loans, removing the loans from default status.

14. Upon rehabilitation, the loans were assigned to be serviced by Great Lakes, and a total of $200 in payment via a voluntary rehabilitation payment was credited to the remaining balance on November 23, 2012.

15. On May 4, 2011, Plaintiff renewed her complaints regarding the loan status that the loans had been paid off and/or she had not incurred the loans.

16. On or about January 11, 2015 and February 10, 2015, Plaintiff defaulted on her loans once again.

17. On May 19, 2015 and June 23, 2015, the loans were placed with the Education's Default Resolution Group (DRG) for servicing and collection.

18. On May 21, 2015 and June 24, 2016, Education again contacted Plaintiff via letters to inform her of the placement of her loans with Education.

19. On August 18, 2015, Education notified Plaintiff her loans would once again be

3

placed for collection in TOP if she did not make repayments. Education never received a response.

20. Plaintiff resumed objections to the collection of the debt, and Education responded on June 9, 2017 to her concerns.

21. Over the course of the past year, Education only received one payment of $487.00, made October 25, 2017.

## **Amounts Still Due**

22. After all payments and offsets $3,548.31 is still owed on the first loan.

   a. $2761.88 in principal
   b. $786.43 in unpaid accrued interest

23. After all payments and offsets, $5,103.55 is still owed on the second loan.

   a. $3,897.47 in principal
   b. $1,206.08 in unpaid accrued interest

24. After all payments and offsets, the total amount still due to the Education by Plaintiff is $8651.86.

25. Attached is a declaration certifying that the above amounts are true and correct, and $8651.86 is still due.

## **Procedural History**

26. On or about December 12, 2017, Plaintiff filed a petition in Jackson County Circuit Court against the Missouri Department of Higher Education and the United States Department of Education.

27. On or about February 9, 2018, an entry of appearance was filed by the Missouri Department of higher education with a motion to quash which was granted and a motion to dismiss which was ruled no longer an issue.

28. On or about April 5, 2018, Plaintiff filed a response.

29. On or about May 4, 2018, a motion for continuance was filed on behalf of the US Department of Education by the United States Attorney's Office for the Western district of Missouri.

30. On or about May 30, 2018, the United States Attorney's Office on behalf of the US Department of Education motioned to remove the case to federal court.

31. Pursuant to 28 U.S.C. §§ 1441, 1442 and 1446, the case was removed to the United States District Court for the Western District of Missouri. All appropriate requirements for removal to Federal Court were followed.

32. On or about June 6, 2018, a motion for extension of time to file answer or otherwise respond to Petition was filed by the United States Attorney's Office on behalf of the US Department of Education and was granted.

33. On or about June 25, 2018, the United States Attorney's Office on behalf of the US Department of Education filed their answer to Plaintiff's complaint.

## LEGAL ARGUMENTS

**A. Plaintiff's Motion for Summary Judgment should be granted because Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted.**

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the

5

moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgement, a court must look to how a party supports their factual positions. Fed. R. Civ. P. 56(c)(1). Plaintiff's filings are unclear, improperly pleaded, and fail to state a claim upon which relief can be granted.

A party may support their factual positions regarding facts which cannot be disputed by citing to a provided affidavit. Fed. R. Civ. P. 56(c)(1)(A).

In the present case, a declaration has been provided which plainly reflects Plaintiff's loan amounts were and are in default (and have not been paid) since they were transferred to Education in 1991.

Plaintiff's states in her Amended Complaint (Doc. 14, p. 3) that the following federal statues, federal treaties, and/or provisions of the United States Constitution are at issue in this case: "My 14th Amended Rights (life, liberty/property -r- pursuit of happiness) have been violated; my federal income taxes is taken from me (illegally) and that my creditability -and- being black ball (sic)" all must fail based on the attached Education affidavit, which explains the amounts still due Education, justifying collection efforts by Education.

Plaintiff's claims in her Amended Complaint (Doc. 14, p. 4) that the amount in controversy is the following: "My Federal income tax has been taking (sic) from me. Loans that have been paid since '1985.' Its been 32 years, the US Dept. of Ed. -n- Missouri Dept. of higher Education have been garnishing my Federal income tax check." All claims must fail based on the attached Education Declaration, which explains the amounts still due Education, justifying collections efforts taken by Education.

Plaintiff's claims in her Amended Complaint (Doc. 14, p. 4-5) that her "Federal income tax checks have been and still taking (sic) from me going on 33 years." She also claims "My credit history has been shot down. I can't by (sic) working unless I pay double/triple far as credit/cash. I can't even buy a (unintelligible) house." She further claims "They have taken my Federal income tax checks I can't received (sic) head of household (EIC). My credit history is shot to hell." She states the events started here in Kansas City, MO. –n- other states, from 1986 to 2017, and continue to the future/(unintelligible). All claims must fail based on the attached Education Declaration, which explains the amounts still due Education, justifying collection efforts taken by Education.

In response to whether more than one claim is asserted, Nelson stated (Doc. 14, p. 5) as follows:

> I have borrowed $2500 dollar Loans twice in 1982 –N- 1984. These loans was paid off in 5/21/1986. The Missouri Dept of Higher Educations was the Guarantor who (unintelligible) me the Loans; They collected My Federal Income tax checks up until 1999. The Missouri Dept. of higher Education sold –N- transfer my Loan to "The Dept of Education." The Loans was Alread paid in full. The Dept of Education collected my federal income tax checks from 2000-2017 and still continue to collect, and these Loans are paid in full.

In Plaintiff's relief request (Doc. 14, p. 5), she asks this Court to "stop them taking my checks." She states "My grandchildren –n- I was homeless from me being black bald (sic). I would like the Courts to have my Credit history repaired/corrected. I would like my money's back with interest and I would like to be compensated for punitive damages and court cost." In addition, she "would like to be reinstated through the IRS for my (EIC) been taking (sic) away from me." Plaintiff provides no statutory authority to substantiate an award of actual or punitive damages. Indeed punitive damages are not authorized in any instance claimed by Plaintiff in her Amended Complaint because there is no specific waiver provided in the United States Constitution, statute, regulation or other federal law.

7

Finally, in response to the question (Doc. 14, p. 6) in the form used by Plaintiff to file her complaint, asking for Plaintiff's actual damages or punitive money damages Plaintiff believes she is entitled to recover, Plaintiff states the "estimate has been taken away" from her, "including Head of Household (EIC) is well over $200,000.00. Plaintiff says "I couldn't buy a house. I have to pay double/tripple (sic) for a car. I pay out 25 to 35 percent when buying a car. I have a hard time renting a home. I am charge (sic) double/tripple (sic) the amount the house is not worth it. Constant put up deposit toward utilities which every state I live in."

Overall, Plaintiff states conclusions (specifically that the loans have been paid in full) without any supporting documents or case law as grounds for relief in her Amended Complaint. Plaintiff's allegations are directly contradicted by the declaration of Education Program and Management Analyst, Chad Keller. The Declaration demonstrates amounts still due Education, which legally justify all collection efforts by Education complained of by Plaintiff, negating her request for relief. Plaintiff thus fails to plead facts which state a claim as a matter of law under Federal Rules of Civil Procedure 12(b)(6) and summary judgment should be granted.

**B.      Summary Judgment should be granted because Plaintiff's Amended Complaint seeks prohibited injunctive relief against Education.**

Plaintiff's request for a Court order stating her "account" is paid in full is essentially a request for declaratory relief enjoining Education from any future collection efforts against Plaintiff regarding her FDLP loans. Such relief is prohibited under the HEA, 20 U.S.C. § 1082(a)(2), which specifically disallows injunctive relief against the Secretary of the Department of Education (Secretary), providing that:

> [i]n the performance of, and with respect to the functions, powers, and duties [set forth in the HEA], the Secretary may . . . sue and be sued in . . . any district court of the United States . . . ; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary.

8

The declaratory relief sought by Plaintiff is prohibited, because it seeks to accomplish what injunctive relief would accomplish (i.e. restrictions on the Secretary's ability to engage in future collection efforts on Plaintiff's loans). See *American Ass'n of Cosmetology Schools v. Riley*, 170 F. 3d 1250, 1254 (9th Cir. 1999); *Green v. U.S.,* 163 F. Supp. 2d 593, 597 (W.D. N.C. 2000).

      **C.**      **Summary Judgment should be granted because Education has not waived sovereign immunity and the Court lacks subject matter jurisdiction.**

Because Education has not waived its sovereign immunity for claims seeking injunctive relief, the Court lacks subject matter jurisdiction over Plaintiff's Amended Complaint. 20 U.S.C. § 1082(a)(2) must be strictly construed to mean what it says:

> When Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions to legislation must be strictly observed, and exceptions thereto are not to be lightly implied.

*Block v. North Dakota*, 461 U.S. 273, 287 (1983). A waiver of sovereign immunity "must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." *Minda v. U.S.*, 851 F.3d 231, 237 (2d Cir. 2017.)

## **CONCLUSION**

Based on all arguments included in this Motion for Summary Judgment, individually or together, Plaintiff's Motion for Summary Judgment should be granted for either failure to state a claim upon which relief should be granted, because Plaintiff improperly seeks injunctive relief from Education, and because Education has not waived sovereign immunity.

WHEREFORE, the United States Department of Education requests this Court grant its Motion for Summary Judgment in favor of Education as there is no genuine dispute as to any

9

material fact and Education is entitled to judgment as a matter of law, and for such other relief deemed just and proper.

>
> Respectfully submitted,
>
> Timothy A. Garrison
> United States Attorney

By: */s/ Jane Pansing Brown*
Jane Pansing Brown    MO #30658
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3130
Facsimile: (816) 426-3165
E-mail: jane.brown@usdoj.gov
ATTORNEYS FOR DEFENDANT
UNITED STATES OF AMERICA

**Certificate of Service**

I hereby certify that on this 17th day of December, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record and a true and correct copy of the foregoing was sent via United States mail, postage prepaid, to the following non-ECF participant:

> Faith N. Nelson
> 7401 NE 110th St. Beagle Court
> Kansas City, MO  64134
> *Pro Se Plaintiff*

> */s/ Jane Pansing Brown*
> Jane Pansing Brown
> Assistant United States Attorney

10